# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JAVIER AMADOR-FLORES,

      Petitioner,

v.                                                       Civ. 19-586 KG/SCY
                                                         Cr. 15-2622 KG/SCY-5

UNITED STATES OF AMERICA,

      Respondent.

## PROPOSED FINDINGS & RECOMMENDED DISPOSITION

This matter is before the Court on Petitioner Javier Amador-Flores's Amended "Motion

Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal

Custody." Civil ("CV") Doc. 6. Pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil

Procedure 72(a), United States District Judge Kenneth Gonzales referred this matter to me to

conduct hearings, if warranted, and to perform any legal analysis required to recommend an

ultimate disposition of the case. CV Doc. 8. Consistent with that order of reference and having

reviewed the pleadings and record before the Court, I recommend that the Court deny the

amended motion to vacate.

## BACKGROUND

### I.    Criminal Case

On July 23, 2015, a grand jury indicted Mr. Amador-Flores and four others,[1] charging

conspiracy to distribute 500 grams and more of a mixture and substance containing a detectable

---

[1] The four co-defendants are Jose Manuel Trujillo, a.k.a. Paisa, Joel Dominguez-Morales, Maria
Marcelina Cardoza-Burciaga, and Myrna Orozco. CR Doc. 24.

amount of methamphetamine contrary to 21 U.S.C. § 841(a)(1) and (b)(1)(A).[2] Criminal ("CR") Doc. 24. Thereafter, Mr. Amador-Flores was arrested on July 29, 2015, CR Doc. 35, and made his initial appearance in federal court on July 31, 2015, CR Doc. 33. At that time, the court appointed Mr. Amador-Flores his first attorney, Cori Ann Harbour-Valdez. CR Doc. 38. On February 29, 2016, while the case was proceeding toward trial, Mario Esparza entered his appearance as counsel for Mr. Amador-Flores, noting that Mr. Amador-Flores's family hired him. CR Docs. 101, 102. The court allowed him to replace Ms. Harbour-Valdez. CR Doc. 103.

Mr. Amador-Flores proceeded to trial on July 18, 2016. CR Doc. 139. At trial, the United States argued that Mr. Amador-Flores allowed a drug-trafficking conspiracy to exist by being the person who stashed the drugs at his house. CR Doc. 202 at 52:16 to 64:25 (trial transcript of the government's opening statement). On July 20 the jury returned a guilty verdict on the one charged count: conspiracy to distribute 500 grams and more of a mixture and substance containing a detectable amount of methamphetamine. CR Docs. 139, 144. While pending sentencing, Mr. Esparza withdrew as counsel for Mr. Amador-Flores, and the court appointed Steve Lorenzo Almanza as Mr. Amador-Flores's new counsel. CR Docs. 172, 173, 174. On April 11, 2017 the court sentenced Mr. Amador-Flores to 120 months' imprisonment and five years' unsupervised release. CR Doc. 189.

Mr. Amador-Flores appealed on April 25, 2017. CR Doc. 191. Thereafter, the Tenth Circuit denied Mr. Almanza's motion to continue as appointed counsel for Mr. Amador-Flores, terminating Mr. Almanza as counsel and appointing attorneys Howard Pincus and O. Dean

---

[2] The United States filed a superseding indictment on October 15, 2015, charging Amador-Flores with the same count (conspiracy to distribute), but altering the time of the alleged crime. CR Doc. 74. Leading up to trial, the United States filed a notice of intent to proceed at trial with the original indictment. CR Doc. 133.

Sanderford. CR Doc. 195. On April 26, 2018, the Tenth Circuit issued a mandate, affirming Mr. Amador-Flores's conviction. CR Doc. 211. Mr. Amador-Flores filed a petition for writ of certiorari to the United States Supreme Court, which the Supreme Court denied on October 9, 2018. CR Doc. 212, 214.

## II.    Habeas Petition

On June 24, 2019, Mr. Amador-Flores, proceeding pro se, filed a motion to vacate under § 2255. CR Doc. 215; CV Doc. 1. The Court reviewed his sixty-nine-page motion and instructed Mr. Amador-Flores to refile his motion on the proper § 2255 form, CV Doc. 5, which Mr. Amador-Flores did on May 6, 2020, CV Doc. 6.[3] Thereafter, having determined that the amended motion survived initial screening pursuant to Habeas Corpus Rule 4, the Court ordered the United States to respond. CV Doc. 7. Prior to answering, the United States moved for an order finding that Mr. Amador-Flores waived his attorney-client privilege related to his § 2255 motion and authorizing his former attorneys to disclose communications necessary to address the merits of Mr. Amador-Flores's ineffective assistance of counsel claims. CV Docs. 12, 13, 14. The Court granted those motions, CV Docs. 16, 17, 18, and the United States filed an answer to Mr. Amador-Flores's motion to vacate on September 15, 2020, CV Doc. 19.

On October 1, 2020, Mr. Amador-Flores filed a notice that the United States had not served him with a copy of its filings. CV Doc. 20. The Court entered an order requiring a response from the United States as to Mr. Amador-Flores's notice of non-service. CV Doc. 21.

---

[3] In deciding this case, the Court addresses the claims in the amended motion to vacate. However, Mr. Amador-Flores brings the same claims in his amended motion as he did in his original motion; the amended motion is just on the proper form and is less detailed. *Compare* CV Doc. 1 at 4-5, *with* CV Doc. 6 (stating the same grounds for relief). Because the claims are the same, the Court will consider the more detailed factual allegations Mr. Amador-Flores presents in his original motion.

In response, the United States filed a certificate of service, but did not provide the date of service. CV Doc. 22. Because it appeared that the United States did not serve its answer on Mr. Amador-Flores when it filed that answer with the Court, the Court entered an order allowing Mr. Amador-Flores additional time to file a reply. CV Doc. 23. Mr. Amador-Flores filed a reply on December 17, 2020, CV Doc. 24, and his § 2255 motion is now fully briefed.

Mr. Amador-Flores's amended motion to vacate raises four grounds on which he asserts he is being held in violation of the Constitution, laws, or treaties of the United States: grounds one, two, and four are ineffective assistance of counsel and ground three is government misconduct. However, ground three appears to be related to one of Mr. Amador-Flores's claims for ineffective assistance of counsel; therefore, the Court will address ground three together with the ineffective assistance of counsel claim to which it relates.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a federal prisoner who "claim[s] the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . , or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Relief is available under Section 2255 only if "the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (internal quotation marks and citation omitted). The court must presume "that the proceedings leading to the conviction were correct"; the burden is on the petitioner to demonstrate otherwise. *Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989) (citing *United States v. Morgan*, 346 U.S. 502, 512 (1954)).

The court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). In other words, where the record for a Section 2255 motion "conclusively and expressly belie[s] [Petitioner's] claims," no evidentiary hearing is required. *Machibroda v. United States*, 368 U.S. 487, 495 (1962); *see also In re Lindsey*, 582 F.3d 1173, 1175-76 (10th Cir. 2009) (holding that an evidentiary hearing is not needed if "the district court has concluded that the record does not entitle the prisoner to relief; either the prison has failed even to allege facts on which relief could be predicated, or the records conclusively contradicts the prisoner's allegations").

When a party proceeds pro se, the court generally construes his pleadings liberally, holding them to a less stringent standard than those filed by a party represented by counsel. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the court will not fashion Petitioner's "arguments for him where his allegations are merely conclusory in nature without supporting factual averments." *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

## ANALYSIS

In his amended motion to vacate, Mr. Amador-Flores asserts that he was denied effective assistance of counsel by his three trial attorneys, Ms. Harbour-Valdez, Mr. Esparza, and Mr. Almanza. As an initial matter, I recommend finding that such claims for ineffective assistance of counsel are not procedurally barred and should be addressed on the merits.[4] Normally, "Section 2255 is not available to test the legality of matters which should have been raised on appeal." *United States v. Cox*, 567 F.2d 930, 932 (10th Cir. 1977). Here, the only issue Mr. Amador-Flores raised on appeal was whether the district court properly allowed one of the government's

---

[4] In its answer, the United States does not explicitly assert that Mr. Amador-Flores's claims for ineffective assistance of counsel are procedurally barred, but it does spend a portion of its brief laying out the law on procedural bar. CV Doc. 19 at 16-17.

witnesses to offer expert testimony about the drug-trafficking industry. CR Doc. 211-1.

However, the Tenth Circuit has held that the procedural bar does not apply to claims of

ineffective assistance of counsel. *See United States v. Galloway*, 56 F.3d 1239, 1242-43 (10th

Cir. 1995).

Turning to the merits, it is well established that defendants have a Sixth Amendment right

to effective counsel. *See Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). "The

benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so

undermined the proper functioning of the adversarial process that the trial cannot be relied on as

having produced a just result." *Id.* at 686. Accordingly, the Supreme Court in *Strickland* devised

a two-step inquiry to determine whether a lawyer's poor performance deprived an accused of his

Sixth Amendment right to assistance of counsel. *Id.* at 686-87. In order to establish an ineffective

assistance claim, a movant must demonstrate (1) "counsel's representation fell below an

objective standard of reasonableness," and (2) "the deficient performance prejudiced the

defense." *Id.* at 687-88.

Under the first prong, "the performance inquiry must be whether counsel's assistance was

reasonable considering all circumstances." *Id.* at 688. However, review of an attorney's

performance "must be highly deferential," and the court must "evaluate the conduct from

counsel's perspective at the time." *Id.* at 689. Indeed, "the defendant must overcome the

presumption that, under the circumstances, the challenged action might be considered sound trial

strategy." *Id.* (citation omitted). The question to determine deficient performance "is whether

[the] representation amounted to incompetence under 'prevailing professional norms,' not

whether it deviated from best practices or most common custom." *Simpson v. Carpenter*, 912

F.3d 542, 593 (10th Cir. 2018) (citing *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).

The inquiry does not stop there; rather, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. Under the second prong of the inquiry, the movant must establish prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* Courts may analyze either prong first and need only address one prong if the movant fails to make a sufficient showing on that prong. *Id.* at 697.

## I.      Cori Ann Harbour-Valdez

Mr. Amador-Flores asserts that his first trial counsel, Ms. Harbour-Valdez, was ineffective because "she failed to explain to the Movant the difference between Conspiracy and a Lesser Included Offense that was extended to him by the government in a thirty-month Plea Agreement pursuant to the Federal Rules of Criminal Procedures 11(c)(1)(C)." CV Doc. 6 at 4. In his more detailed original petition, Mr. Amador-Flores specifies that the lesser included offense to which he is refers is the offense of misprision of a felony. CV Doc. 1 at 6. Thus, Mr. Amador-Flores's allegation is that Ms. Harbour-Valdez acted ineffectively because "defendant's possible participation in the misprision of a felony charge was not explained by Ms. Harbour-Valdez to the defendant . . ." *Id.* at 7.

In response, the United States provides an affidavit from Ms. Harbour-Valdez where she explains that on August 5, 2015 the United States extended a plea agreement to Mr. Amador-Flores. CV Doc. 19-1 at 2 (Harbour-Valdez Aff.), 8-18 (Ex. B, proposed plea agreement). The plea agreement would have allowed Mr. Amador-Flores to plead guilty to the lesser-included offense of conspiracy to possess with intent to distribute (as opposed to conspiracy to distribute)

a mixture and substance containing a detectable amount of methamphetamine. *Id.* This plea

offered a "C-level" offense under 21 U.S.C. § 841(a)(1) and (b)(1)(C) which includes no

mandatory minimum sentence, as opposed to the "A-level" offense Mr. Amador-Flores was

indicted on under 21 U.S.C. § 841(a)(1) and (b)(1)(A), which carries a ten-year mandatory

minimum. *See* 28 U.S.C. § 841(a)(1), (b)(1)(A), (b)(1)(C). The plea agreement also offered

other possible reductions if Mr. Amador-Flores cooperated with the government and accepted

responsibility. CV Doc. 19-1 at 2, 8-18.

Ms. Harbour-Valdez further explains that on February 16, 2016, the United States

extended a second plea offer to Mr. Amador-Flores under Federal Rule of Criminal Procedure

11(c)(1)(C). CV Doc. 19-1 at 3-4 (Harbour-Valdez Aff), 27-36 (Ex. H, proposed plea

agreement). This agreement again offered that Mr. Amador-Flores plead guilty to the "C-level"

lesser-included offense of conspiracy to possess with intent to distribute under 21 U.S.C. §

841(a)(1) and (b)(1)(C), with a stipulated sentence of thirty months. *Id.* According to Ms.

Harbour-Valdez, Mr. Amador-Flores rejected both plea agreements, indicating his desire to

proceed to trial. *Id.* at 2-4.

In Reply, Mr. Amador-Flores shifts his argument. He acknowledges, "it could be true that

the government never extended any offer related to Misprision of a Felony" but then points out

that Ms. Harbour-Valdez acknowledged that he had told her that he "did not understand the

charges, who had brought them, and on what grounds they had been brought." CV Doc. 24 at 2

(quoting CV Doc. 19-1 at 3 (Harbour-Valdez Aff.)). He further elaborates that Ms. Harbour-

Valdez never explained his "participation in the lesser included charge to understand as to why

he should have taken the offered deal" and not understanding what was meant by participation

"was the reason Mr. Amador-Flores 'did not understand the charges.'" CV Doc. 24 at 2. The Court will address Mr. Amador-Flores's arguments in turn.

Mr. Amador-Flores's original argument (that his counsel was ineffective in not explaining the charge of misprision of a felony) is a non-starter. It is undisputed that the United States never offered to drop the drug trafficking charges against Mr. Amador-Flores in exchange for Mr. Amador-Flores's agreement to plead guilty to misprision of felony charges. *See* CV Doc. 19-1 at 8-18 (Ex. B), 27-36 (Ex. H) (proposing Mr. Amador-Flores plead guilty to conspiracy to possess with intent to distribute and never mentioning a plea to misprision of a felony).[5] Accordingly, even taking as true Mr. Amador-Flores's allegation that Ms. Harbour-Valdez's never explained the offense of misprision of a felony to him, Ms. Harbour-Valdez did not act ineffectively. Those charges were never on the table; the United States neither charged Mr. Amador-Flores with misprision of a felony nor referenced such charges during plea negotiations and so Ms. Harbour-Valdez had no reason to go over those charges with Mr. Amador-Flores.

Mr. Amador-Flores's alternative argument that Ms. Harbour-Valdez did not adequately explain the meaning of "participation" to him also fails. First, Mr. Amador-Flores did not raise this argument until his reply brief and, therefore, has waived it. *See Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) ("[A] party waives issues and argument raised for the first time in a reply brief." (internal quotation and citation omitted)).

Second, Mr. Amador-Flores does not dispute any of the allegations Ms. Harbour-Valdez and Mr. Lopez made in their affidavits. Ms. Harbour-Valdez affirms that she met with Mr. Amador-Flores or conferred with him on the phone at least twenty times over the six-month

---

[5] The record also demonstrates that both the Court and Ms. Harbour-Valdez advised Mr. Amador-Flores that the minimum term of incarceration for the A-level drug conspiracy for which he was charged is ten years. CR Doc. 33; CV Doc. 19-1 at 2.

period that she represented him and that she had numerous conversations with him about the charge he faced, the potential penalties, the plea agreements and their associated penalties, and the risks associated with going to trial. CV Doc. 19-1 at 1-4 (Harbour-Valdez Aff.). Mr. Ray Lopez, the translator, confirmed that he met with Ms. Harbour-Valdez and Mr. Amador-Flores on fifteen different occasions and that during those meetings "[t]he plea agreements were read and explained in great detail," and that "Mrs. Harbour-Valdez did explain each and every provision and stipulation in the plea agreements." CV Doc. 19-2 (Lopez Aff.). Thus, the record is undisputed that Ms. Harbour-Valdez spent hours going over the charges and evidence against Mr. Amador-Flores, as well as the terms of the plea offers extended to Mr. Amador-Flores.

Importantly, although Mr. Amador-Flores alleges that Ms. Harbour-Valdez failed to explain the charge of misprision of a felony and the meaning of the word "participation" to him, he does not allege that she failed to go over the plea offers the United States extended to him. And, the affidavits of Ms. Harbour-Valdez and Mr. Lopez set forth facts, which Mr. Amador-Flores does not contest in his Reply, that demonstrate Ms. Habour-Valdez had extensive discussions with Mr. Amador-Flores about the United States' plea offers. Thus, *Missouri v. Frye* cannot serve as a springboard for Mr. Amador-Flores's § 2255 petition. *See Missouri v. Frye*, 566 U.S. 134, 145 (2012) (finding defense counsel's performance deficient under the first *Strickland* prong when counsel failed to communicate a plea offer to the defendant). Similarly, the undisputed affidavits of Ms. Harbour-Valdez and Mr. Lopez alleviate any need for an evidentiary hearing. *See In re Lindsey*, 582 F.3d at 1175-76 (holding that an evidentiary hearing is not needed if "the district court has concluded that the record does not entitle the prisoner to relief; either the prisoner has failed even to allege facts on which relief could be predicated, or the records conclusively contradicts the prisoner's allegations"); *United States v. Hall*, 746 F.

App'x 773, 776 (10th Cir. 2018) ("[G]eneral conclusory allegations of ineffective assistance of counsel impose no obligation on the district court to conduct an evidentiary hearing.").

Third, the United States presented significant evidence that Mr. Amador-Flores ran a stash house, to include evidence that law enforcement discovered a large amount of methamphetamine and financial evidence of drug trafficking at Mr. Amador-Flores's house. CV Doc. 19 at 6-15. Given the significant evidence of Mr. Amador-Flores's extensive participation in the drug conspiracy for which he was convicted, Mr. Amador-Flores cannot credibly argue that his decision to decline the United States' plea offers was based on a misunderstanding as to whether his participation in the conspiracy would have been sufficient to support a conviction.

Because Mr. Amador-Flores fails to demonstrate either the ineffectiveness or prejudice prong of the *Strickland* test, I recommend denying Mr. Amador-Flores's motion to vacate, without an evidentiary hearing, as to his claim that Ms. Harbour-Valdez provided ineffective assistance.

## II.    Mario Esparza

Roughly seven months into his criminal case, Mr. Amador-Flores's family hired a new defense attorney, Mario Esparza, who represented Mr. Amador-Flores through trial. Mr. Amador-Flores asserts that Mr. Esparza provided ineffective assistance of counsel based on six different reasons. The Court addresses each in turn.

### a.    Failure to Investigate and Introduce Exculpatory Evidence

First, Mr. Amador-Flores alleges that Mr. Esparza provided ineffective assistance of counsel because he failed to "investigate and to introduce exculpatory evidence that contradict trial witness [sic]." CV Doc. 6 at 5. To support this argument, he attaches a bank statement from March-April 2015. *Id.* at 13-14. Mr. Amador-Flores provides no additional details in his

amended motion, but elaborates in his original motion that the bank statement "contradicts the government's claims that the defendant and his co-defendant were counting money from drug proceeds and that proves defendant's legitimate income and counsel's errors that prejudiced the defendant through the whole process." CV Doc. 1 at 7.

To provide context, at trial co-conspirator Maria Cardoza-Burciaga testified that she observed Mr. Amador-Flores and another co-conspirator, Myrna Orozco standing in their bedroom while Ms. Orozco counted large amounts of cash and Mr. Amador-Flores observed. CR Doc. 203 at 127:18 to 128:12. Mr. Amador-Flores asserts in his original motion that the banking records show that they were not counting drug money, but that Ms. Orozco withdrew small amounts of cash from legitimately earned income, which made up the money Ms. Cardoza-Burciaga testified she saw them counting. CV Doc. 1 at 14-15. He asserts that he and Ms. Orozco were counting money to deposit for a horse trailer debit. *Id.* at 15. Mr. Amador-Flores provided the bank records to Mr. Esparza, but Mr. Esparza did not introduce them at trial. *See* CV Doc. 24 at 2 (Amador-Flores's reply); CV Doc. 19-3 ¶ 6 (Esparza affidavit).

Yet, Mr. Amador-Flores offers no information to overcome the presumption that Mr. Esparza's decision not to further investigate and introduce the bank records was a sound trial strategy, as is required under the first *Strickland* prong. To the contrary, Mr. Esparza states in his affidavit that he specifically chose not to introduce the bank records because they could work as inculpatory, not exculpatory evidence and because Mr. Amador-Flores would have to testify in order to introduce the records but Mr. Esparza and Mr. Amador-Flores decided it would be best if Mr. Amador-Flores did not testify because, in part, of the possibility for impeachment. CV Doc. 19-3 ¶¶ 6, 7. Mr. Amador-Flores also makes no argument regarding the second *Strickland*

prong, prejudice, or that the results of the proceeding would have been different had Mr. Esparza introduced the bank records at trial. I therefore recommend finding that he is not entitled to relief on this claim that Mr. Esparza provided ineffective assistance of counsel.[6]

### b.    Entered Stipulation with the Government

Mr. Amador-Flores asserts that Mr. Esparza provided ineffective assistance of counsel when he entered into a "stipulation with the government that affected the movant during the whole process." CV Doc. 6 at 5. Indeed, on June 27, 2016, the United States filed a notice of stipulation to be admitted into evidence and read to the jury. CR Doc. 125. The stipulation explained that law enforcement seized eight packages at an abandoned bar that contained a total of 3.432 kilograms of actual methamphetamine. CR Doc. 125-1 at 2. Further, law enforcement found 70.244 grams of actual methamphetamine at 1711 County Road (the residence they associated with Mr. Amador-Flores). *Id*. at 3. Additionally, the stipulation explained that law enforcement officers found a personal use quantity of methamphetamine in a baby's sock inside a pickup truck driven by Myrna Orozco. *Id*.

---

[6] Related to his claim for ineffective assistance of counsel, Mr. Amador-Flores also moves to vacate his sentence based on government misconduct. CV Doc. 6 at 7 (ground three). He asserts that "[t]he government allowed the witness to testify that the counted money were drugs proceeds, and they were having Myrna Orozco cooperating, who knew where the money came from, because she was the one that withdraw the money from the bank [sic]." *Id.* I recommend denying his motion as to this ground for relief because it is unclear what constitutional violation he is alleging and "conclusory allegations alone, without supporting factual averments, are insufficient to state a claim under § 2255." *Hall*, 746 F. App'x at 776. To the extent Mr. Amador-Flores is asserting a claim for prosecutorial misconduct, I recommend that such a claim fails because he "does not describe any of the exculpatory evidence that prosecutor allegedly withheld or how he was prejudiced." *Id.* at 777. Further, the Court should not consider this claim of prosecutorial misconduct because "Section 2255 is not available to test the legality of matters which should have been raised on appeal," *Cox*, 576 F.2d at 932, and Mr. Amador-Flores did not raise this issue on direct appeal.

I recommend finding that this claim for ineffective assistance of counsel fails because, first, Mr. Amador-Flores does not make any argument to overcome the presumption that the stipulation was a sound trial strategy. Mr. Esparza, on the other hand, asserts that he discussed the proposed stipulation with Mr. Amador-Flores before agreeing to it and advised Mr. Amador-Flores that the stipulation would not impact the defense theory of the case. CV Doc. 19-3 ¶¶ 11, 13 (Esparza affidavit explaining that their defense theory was that Mr. Amador-Flores had no knowledge or involvement in the drug trafficking organization since no drugs were found on his person, so the stipulation regarding the quantity, purity, and identification of methamphetamine was not relevant to that theory).

But, even assuming entering into the stipulation fell below an objective standard of reasonableness, I recommend finding that this claim fails because Mr. Amador-Flores has not shown prejudice. Mr. Esparza affirms that "[e]ven if we had not entered into a stipulation, the government had sufficient evidence to prove beyond a reasonable doubt that the total amount of methamphetamine mixture attributable to Mr. Amador-Flores was 500 grams where agents seized 3.4 net kilograms of methamphetamine at the abandoned bar and 70.2 net grams of pure methamphetamine at Mr. Amador-Flores's residential property." CV Doc. 19-3 ¶ 12. Mr. Amador-Flores presents no arguments to the contrary to show that there is a reasonable probability that the results of the case would have been different without the stipulation.[7] To the contrary, Mr. Amador-Flores writes, "The fact that the petitioner knew about the 8 pounds transaction . . . did not make him part of the conspiracy . . . ." CV Doc. 1 at 24-25. Thus, Mr.

---

[7] In his original motion, Mr. Amador-Flores argues that he did not have control over the residential property (1711 County Road 390, Denver City, Texas) discussed in the stipulation. CV Doc. 1 at 23-24. However, the stipulation did not say that Mr. Amador-Flores had control over that property. Accordingly, I recommend finding that this argument is irrelevant as to whether Mr. Esparza was ineffective by agreeing to the stipulation.

Amador-Flores's challenge has never been to the weight of the packages or what those packages contained. Because the allegation that the packages contained more than three kilograms of methamphetamine has never been in dispute, and Mr. Amador-Flores has provided no reason to dispute this allegation, he cannot demonstrate that his attorney's stipulation to facts not in dispute prejudiced him.

### c.    Failed to Confront Agents During Trial

Mr. Amador-Flores asserts that Mr. Esparza provided ineffective assistance of counsel when he "failed to confront agents during trial regarding their reports, personal notes, and contradictory testimonies before the Grand Jury." CV Doc. 6 at 5. Though he does not elaborate in his amended motion, in his original motion Mr. Amador-Flores raises several concerns with Agent Robles's grand jury testimony.

First, Mr. Amador-Flores attached to his amended motion an investigation report which includes this agent note: "During an interview conducted on May 6, 2015, Orozco stated that Amador was aware of her involvement in the drug transaction but she recanted this statement on today's interview and stated that Amador has no idea of Orozco's involvement." CV Doc. 6 at 16. Mr. Amador-Flores explains in his original motion that, despite Ms. Orozco recanting, Agent Robles testified two days later before the grand jury that Ms. Orozco told agents that Mr. Amador-Flores packaged drugs along with her at their residence. CV Doc. 1 at 25. Mr. Amador-Flores asserts that Mr. Esparza's failure to confront Agent Robles at trial about his grand jury testimony amounts to ineffective assistance of counsel.

However, evidence in the record contradicts Mr. Amador-Flores's assertion. The investigation report that Mr. Amador-Flores points to states that Ms. Orozco recanted her statement that Mr. Amador-Flores was aware of her involvement in the drug transaction. CV

Doc. 6 at 16. Further down, the investigation report also states that "Orozco stated that she is aware that Amador would package and store the meth at their house for Trujillo and Dominguez and he would sell small amounts from his house." *Id.* It is this second statement which Mr. Amador-Flores complains that Agent Robles repeated to the grand jury. *See* CV Doc. 1 at 25. But Mr. Amador-Flores never alleges that Ms. Orozco recanted the second statement and the record before the Court does not show that she did. It was reasonable for Mr. Esparza not to cross-examine Agent Robles about whether Ms. Orozco recanted her statement about packaging and storing methamphetamine, when there is no indication in the report that she in fact recanted that statement. Mr. Amador-Flores offers no arguments to the contrary which would establish that Mr. Esparza's performance was deficient or that any alleged deficiency prejudiced him.

Second, Mr. Amador-Flores alleges that Agent Robles testified before the grand jury regarding a statement made by Joel Dominguez-Morales that Mr. Amador-Flores was aware methamphetamine was being stored at his house and that he was the person in charge of storing the methamphetamine. CV Doc. 1 at 25-26, 27. Mr. Amador-Flores asserts that Agent Robles's testimony "was given after Agent Robles had had an interview with Dominguez on July 9, 2015," and that Mr. Esparza "could have confronted Agent Robles under Rule 801(d)(1)(B)(i) regarding his declaration before the grand jury." *Id.* at 26. Mr. Amador-Flores attached to his original motion a report from a Homeland Security Investigations ("HSI") interview with Mr. Dominguez which shows that Mr. Dominguez told investigators that methamphetamine was stored at Mr. Amador-Flores's house and Mr. Amador-Flores was aware it was stored at his house. *Id.* at 65-66. It appears that Agent Robles's grand jury statement was consistent with Mr. Dominguez's statement to HSI investigators and so it is unclear what exactly Mr. Amador-Flores

believes Mr. Esparza should have cross-examined Agent Robles about or how his performance was objectively unreasonable for not cross-examining Agent Robles about that grand jury testimony.

Lastly, Mr. Amador-Flores asserts that "Agent Robles kept hiding the fact or simply deliberately not mentioning the important fact that Amador is not the owner of the mentioned property as Myrna Orozco and Amador-Flores have told him." CV Doc. 1 at 27. Yet again, Mr. Amador-Flores offers no further information to explain how Mr. Esparza's conduct was objectively unreasonable in not cross-examining Mr. Robles about these statements. What's more, Mr. Amador-Flores makes no argument that had Mr. Esparza conducted such a cross-examination, there is a reasonable probability the results of the proceeding would have been different and the Court fails to see any such prejudice. Although establishing that Mr. Amador-Flores did not own the property might have helped distance Mr. Amador-Flores from that property, it would not have obliviated any connection between Mr. Amador-Flores and that property. Indeed, the record contains significant evidence that connects Mr. Amador-Flores to that property, regardless of whether he owned it. For example, agents searched the property at issue with the understanding that it was Mr. Amador-Flores's residence, CR Doc. 203 at 8:1-14, 36:6-14, 168:17-18; agents found Mr. Amador-Flores and Ms. Myrna Orozco residing at the subject property, CR Doc. 202 at 88:1-5; Ms. Orozco informed agents that there might be additional methamphetamine stashed at Mr. Amador-Flores's residence (referring to the subject property), CR Doc. 203 at 73:8-10; Mr. Amador-Flores returned to the property while agents were searching it, was interviewed by an agent, and told the agent about house-guests he occasionally has at the property, CR Doc. 203 at 8:23 to 9:20, 38:25 to 39:23; Mr. Amador-

Flores told an agent that he owned a vehicle parked at the property, CR Doc. 203 at 42:13-22; and Mr. Amador-Flores explained to agents the presence of another vehicle at "his residence" (the subject property), CR Doc. 202 at 108:4-13.

Contrary to Mr. Amador-Flores's unsupported claims, Mr. Esparza affirmed that he reviewed the grand jury transcripts and "believed that the agents had testified consistently with their notes and the notes were not significantly different from their reports." CV Doc. 19-3 ¶ 14. As such, he found "nothing useful for impeachment in their grand jury testimony," but still "aggressively cross-examined Agent Robles about the circumstantial nature of the case against Mr. Amador-Flores." *Id.* And as discussed above, Mr. Amador-Flores presents no arguments to overcome the presumption that Mr. Esparza's actions were part of a sound trial strategy. *See Richie v. Mullin*, 417 F.3d 1117, 1124 (10th Cir. 2005) (reiterating that the Tenth Circuit has "previously noted that counsel's decisions regarding how best to cross-examine witnesses presumptively arise from sound trial strategy"). He also presents no arguments to establish that the results of the proceeding would have been different had Mr. Esparza cross-examined Agent Robles about the statements at issue. For these reasons, I recommend finding that Mr. Amador-Flores's claims that Mr. Esparza provided ineffective assistance of counsel based on his cross-examination of Agent Robles should fail.

### d.     "Failed in Witnesses Cross-Examinations"

Mr. Amador-Flores asserts that Mr. Esparza provided ineffective assistance of counsel when he "failed in the witnesses cross-examinations." CV Doc. 6 at 5. He explains in his original motion that "his counsel failed to do his cross-examination in the same way that he did on his Gun's related cross-examination that left the government without any redirect, and most important, made the witnesses to admit the lack of evidence that was mainly the cross-

examination's goal [sic]." CV Doc. 1 at 29. The Court reads this statement as asserting two claims: first, that Mr. Esparza's cross-examination of certain witnesses was insufficient because it led to the government conducting redirect questioning. Whether the government chooses to redirect or not redirect a certain witness is not in Mr. Esparza's control and Mr. Amador-Flores presents no other information to demonstrate that Mr. Esparza's cross-examination of witnesses who were later subject to redirect examination was objectively unreasonable. He also presents no information to show that, had the government not conducted redirect examination of certain witnesses, there is a reasonable probability that the results of the proceeding would have been different.

Second, Mr. Amador-Flores appears to be asserting that Mr. Esparza's cross-examination of certain witnesses was insufficient because he failed to elicit certain testimony about the lack of evidence against Mr. Amador-Flores. To this point, Mr. Amador-Flores lists a number of complaints:

- "Defendant's counsel failed when he did not make the witness to admit that he did not have evidence that the vehicles that were sold by the defendant were used to transport drugs." CV Doc. 1 at 30.

- "Defendant's counsel failed when he did not make the witness to admit that he had no[] evidence of money from drug proceeds that was transferred or deposited by the defendant." *Id.* at 31.

- "Defendant's counsel failed when he did not make the witness to admit that he did not have evidence that the defendant was paid for storing drugs at his residence as the Government was claiming." *Id.*

- "Defendant's counsel failed when he did not make the witness to admit that he did not have evidence of drugs that were stored inside the house." *Id.* at 32.

- "Defendant's counsel failed when he did not make the witness to admit that he did not have evidence that the defendant had touched any kind of drug related to the investigation." *Id.* at 33.

- "Defendant's counsel failed when he did not make the witness to admit that he did not have evidence that the defendant was involved in the 8 pound deal that happened on May 6, 2015." *Id.*

- "Defendant's counsel failed when he did not make the witness to admit that he did not have the evidence that the defendant had made any deposit into that bank account." *Id.* at 34.

- "Defendant's counsel failed when he did not make the witness to admit that he did not have evidence. First, 'that someone may have been digging to hide their stash.' Second, that the defendant was involved in that fact." *Id.*

- "Defendant's counsel failed when he did not make the witness to admit that he did not have evidence that the defendant had touched any drug related items." *Id.* at 35.

- "Defendant's counsel failed when he did not make the witness to admit that he did not have evidence that the defendant had touched either the pipes that contained the bags or the bags that contained the drugs that were found in Escalante's property." *Id.*

- "Defendant's counsel failed when he did not make the witness to admit that he specifically did not [have] evidence that the defendant had touched the cutting agent's bags." *Id.* at 36.

- "Defendant's counsel failed when he did not make the witness to admit that she did not know if the money were drug proceeds." *Id.*

- "Defendant's counsel failed when he did not make the witness Maria Cardoza-Burciaga, the Government's main witness, to admit that the defendant was not involved in the eight pound deal that happened on May 6, 2015." *Id.* at 39.

Mr. Amador-Flores also asserts that he was prejudiced by his counsel's failure because "[h]ad the defendant's counsel made the witnesses to admit their lack of evidence, other could have been the outcome of this Motion for Acquittal and he could have used the lack of evidence on his closing arguments." *Id.* at 38.

I recommend finding that Mr. Amador-Flores has not met his burden to show that Mr. Esparza's conduct fell below an objective standard of reasonableness, as required under the first *Strickland* prong, for a number of reasons. First, Mr. Amador-Flores's complaints are conclusory and difficult to follow such that it is not clear exactly what he believes Mr. Esparza did incorrectly. While the Court must liberally construe the pro se party's pleadings, the Court will not fashion Petitioner's "arguments for him where his allegations are merely conclusory in nature without supporting factual averments." *Fisher*, 38 F.3d at 1147.

Further, to the extent Mr. Amador-Flores is asserting that Mr. Esparza was ineffective because he failed to get certain witnesses to say specific things, Mr. Esparza cannot force witnesses to give particular answers during their testimony. And to the contrary, from the excepts of testimony Mr. Amador-Flores included in his original motion, it appears that Mr. Esparza subjected the witnesses to vigorous cross-examination in the areas Mr. Amador-Flores complains Mr. Esparza neglected to address. For example, Mr. Amador-Flores claims that Mr. Esparza failed by not making Ms. Cardoza-Burciaga admit that Mr. Amador-Flores was not involved in

the eight-pound drug deal that happened on May 6, 2015. CV Doc. 1 at 39. But Mr. Amador-Flores also includes in his original motion excerpts of testimony from Mr. Esparza's cross-examination of Ms. Cardoza-Burciaga in which Mr. Esparza established that Mr. Amador-Flores was not present at this drug deal:

> Q [Mr. Esparza]: And on May 6 of 2015, Javier Amador was not present when you, Myrna Orozco, and your boyfriend, Joel Dominguez, went and took eight pounds of meth to that abandoned bar in Hobbs. Isn't that true?
>
> A [Ms. Cardoza-Burciaga]: He was not there.

CV Doc. 1 at 39; *see also* CR Doc. 203 at 140:8-14 (trial transcript).

For these reasons, I recommend denying Mr. Amador-Flores's claim that his trial counsel, Mr. Esparza, was ineffective based on his cross-examination of certain witnesses.

###     e.     Failed to Prepare and Present Arguments and Evidence on a Motion to Acquit

Mr. Amador-Flores next asserts that Mr. Esparza provided ineffective assistance of counsel when he "failed to prepare and to present arguments and evidence favorable on his motion for acquittal pursuant to Rule 29." CV Doc. 6 at 5. After the government and the defense rested their cases, Mr. Esparza moved for judgement of acquittal pursuant to Federal Rule of Criminal Procedure 29. *See* CR Doc. 203 at 187 (trial transcript); *see also* Fed. R. Cr. P. 29(a) ("After the government closes its evidence or after the close of all evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."). Mr. Esparza argued that Mr. Amador-Flores had no knowledge of drugs being stored at his residence and that the government presented no direct evidence that Mr. Amador-Flores knowingly allowed his property to be used as a stash house. CR Doc. 203 at 187:1-10. He pointed out that the government presented no physical evidence

tying Mr. Amador-Flores to drugs and so it was a "case of speculation and conjecture and inferences" with evidence insufficient to sustain a conviction. *Id.* at 187:11-15; *see also id.* at 192-94. In response, the government pointed out all the circumstantial evidence presented during trial. *Id.* at 187-92. After taking the issue under advisement, the court denied the motion for acquittal, ruling that while there was no direct evidence, the totality of the circumstantial evidence, viewed in a light most favorable to the government as required under Rule 29, was sufficient. *Id.* at 195:1 to 196:19. The trial judge, however, noted that it was "not an easy call." *Id.* at 196:22.

In the present motion to vacate, Mr. Amador-Flores does not show how Mr. Esparza's conduct fell below an objective standard of reasonableness. Indeed, he only makes conclusory allegations without specifying how Mr. Esparza's conduct in moving for acquittal was deficient. *See* CV Doc. 1 at 39 (alleging Mr. Esparza did not prepare properly on the motion); *id.* at 40 (alleging Mr. Esparza's arguments were weak and failed to present evidence). Instead, Mr. Amador-Flores repeats arguments about exculpatory evidence (the bank statements), cross-examinations, and the stipulation that the Court already addressed. *Id.* at 41-42; CV Doc. 24 at 6. Mr. Amador-Flores also fails to show that had Mr. Esparza presented more evidence or "properly prepared," that the outcome would have been different, i.e. that the trial court would have found the totality of the circumstantial evidence presented by the government insufficient to sustain a conviction. For these reasons, I recommend denying this claim for ineffective assistance of counsel.

### f. Failed to Seek a Lesser-Included Offense Jury Instruction

Lastly, Mr. Amador-Flores asserts that Mr. Esparza provided ineffective assistance of counsel when he "failed to seek a Lesser Included Offense Jury Instruction." CV Doc. 6 at 5. In his amended motion he does not specify what lesser-included offense jury instruction Mr. Esparza should have sought, but in his original motion he argues that he was "entitled to an instruction of Misprision of Felony which is the lesser included offense most related to the conspiracy charge." CV Doc. 1 at 45.

A defendant "may be entitled to a lesser offense instruction if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *United States v. Young*, 862 F.2d 815, 820 (10th Cir. 1988); *see also* Fed. R. Cr. P. 31(c)(1). A four-part test is used to determine if a lesser-included offense instruction is warranted: (1) "the defendant must properly request the instruction;" (2) "the elements of the lesser included offense must be a subset of the elements of the charged offense;" (3) "the element required for the greater, charged offense that is not an element of the lesser offense must be in dispute;" and (4) "the evidence must be such that the jury could rationally acquit the defendant on the greater offense and convict on the lesser offense." *United States v. Bruce*, 458 F.3d 1157, 1162 (10th Cir. 2006).

Contrary to Mr. Amador-Flores's assertion, misprision of a felony is not a lesser-included offense of the charged offense, conspiracy to distribute methamphetamine. "The offense of misprision punishes the failure to report the commission of a felony." *United States v. Powell*, 982 F.2d 1422, 1434 (10th Cir. 1992). On the other hand, the elements of conspiracy to distribute methamphetamine in this case were (1) "two or more persons agreed to violate the federal drug laws"; (2) "the defendant knew the essential objective of the conspiracy"; (3) "the defendant knowingly and voluntarily involved himself in the conspiracy"; (4) "there was interdependence

among the members of the conspiracy"; and (5) "the overall scope of the conspiracy involved at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine." CR Doc. 140 at 5 (jury instructions). Indeed, in *Powell*, the Tenth Circuit held that a defendant charged with conspiracy to distribute a controlled substance (marijuana) was not entitled to a lesser included offense instruction for misprision because "[t]he elements of the offense of misprision are in no way related to the offense charged." 982 F.2d at 1434. Accordingly, Mr. Esparza's decision not to request lesser-included offense instruction for misprision was not ineffective because Mr. Amador-Flores was not entitled to such an instruction. *See United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006) ("If the omitted issue is without merit, then counsel's failure to raise it is not prejudicial, and thus is not ineffective assistance.").

In his reply, Mr. Amador-Flores asserts that while he may not have been entitled to a lesser-included offense instruction of misprision, "he was entitled to a Lesser Included Offense Instruction." CV Doc. 26 at 6. Yet, he fails to state what other lesser-included offense instruction he was entitled to and therefore fails to show how Mr. Esparza's representation was deficient for not requesting some unknown lesser-included offense instruction.

Finally, even if Mr. Esparza's conduct was objectively unreasonable for not requesting a lesser-included offense instruction, Mr. Amador-Flores presents no arguments to show prejudice. A jury unanimously found that Mr. Amador-Flores committed each element of an A-level drug conspiracy. To think that the same unanimous jury would have come to a totally different conclusion if only they were given a lesser-included offense instruction (whether misprision or some other instruction) is pure speculation. And speculation is not enough to show prejudice. *See Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) ("A reasonable probability is a

probability sufficient to undermine confidence in the outcome of the trial; it does not require that the petitioner show that counsel's deficient conduct more likely than not altered the outcome in the case. However, mere speculation is not sufficient to satisfy this burden." (citations omitted)).

For these reasons, I recommend denying Mr. Amador-Flores's motion as to his claim that Mr. Esparza was ineffective for failing to request a lesser-included offense instruction.

## III. Stephen Almanza

While pending sentencing, Mr. Esparza withdrew as counsel for Mr. Amador-Flores and the court appointed Steve Lorenzo Almanza as Mr. Amador-Flores's new counsel. CR Docs. 172, 173, 174. Mr. Amador-Flores now asserts that Mr. Almanza provided ineffective assistance of counsel because "[h]e failed to file objections to object to the Probation Officer Presentence Report regarding the Drug Quantities attributed to the Movant." CV Doc. 6 at 8. In this original motion, Mr. Amador-Flores elaborates that "Defendant's counsel failed to introduce the investigation reports that show defendant's relevant conduct," and that "Defendant's counsel failed to file a Sentencing memorandum supporting it with the investigation reports, and objecting to the drug quantities attributed to the defendant." CV Doc. 1 at 48, 49.

Indeed, on November 2, 2016 a United States Probation Officer prepared and filed a Presentence Investigation Report ("PSR"), CR Doc. 165 (filed under seal), to which Mr. Almanza did not object. *See* CV Doc. 19-4 ¶ 6 (affidavit from Mr. Almanza affirming that in his professional opinion "there were no legitimate grounds for any objections to the PSR, particularly in relation to Mr. Amador-Flores's relevant conduct, and any such objections would have been frivolous"). It is not totally clear to the Court what objections Mr. Amador-Flores believes Mr. Almanza should have made or how his failure to object fell below an objective standard of reasonableness. To the extent Mr. Amador-Flores is asserting that Mr. Almanza

should have objected to the drug quantities, however, Mr. Almanza did not act ineffectively in not objecting to undisputed and already-stipulated-to facts.

Further, even assuming Mr. Amador-Flores has made a sufficient showing on the first *Strickland* prong (deficient performance), he fails to meet the second *Strickland* prong (prejudice). That is, he fails to show that the outcome of his sentence would have been different had Mr. Almanza objected to the PSR. A jury convicted Mr. Amador-Flores of possessing 500 grams or more of methamphetamine. The statutory minimum penalty for this offense is 120 months imprisonment and five years supervised release. *See* 21 U.S.C. § 841(b)(1)(A) (mandatory minimum sentence of ten years incarceration and five years supervised release). The court sentenced Mr. Amador-Flores to the statutory minimum: 120 months imprisonment and five years supervised release. CR Doc. 189. In other words, the court did not sentence Mr. Amador-Flores to more than the statutory minimum even though it determined that Mr. Amador-Flores had an amount of methamphetamine that was approximately seven times greater than necessary to trigger the statutory minimum. Thus, not only was the amount of methamphetamine in this case not in dispute, it was much greater than necessary to trigger the statutory minimum sentence Mr. Amador-Flores received. Even assuming Mr. Almanza could have reduced the amount of methamphetamine attributed to Mr. Amador-Flores by a few grams had he bothered to quibble over the weighing, the amount attributed to Mr. Amador-Flores still would have been far greater than 500 grams and, accordingly, his sentence would have been exactly the same. Mr. Amador-Flores therefore fails to show prejudice.

I recommend denying Mr. Amador-Flores's motion as to his claim that Mr. Almanza provided ineffective assistance of counsel.

## IV. Evidentiary Hearing

As discussed above, where the record for a Section 2255 motion "conclusively and expressly belie[s] [Petitioner's] claims," no evidentiary hearing is required. *Machibroda*, 368 U.S. at 495; *see also United Sates v. Lopez*, 100 F.3d 113, 120-21 (10th Cir. 1996); 28 U.S.C. § 2255(b). Additionally, "general conclusory allegations of ineffective assistance of counsel impose no obligation on the district court to conduct an evidentiary hearing." *Hall*, 746 F. App'x at 776. For the reasons discussed above, the record is sufficient to dispose of each of Mr. Amador-Flores's allegations of ineffective assistance of counsel and his general conclusory allegations do not warrant a hearing. Therefore, I do not recommend that an evidentiary hearing be held.

## V. Certificate of Appealability

Finally, I consider whether Mr. Amador-Flores is entitled to a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B) (providing no appeal may be taken from a "final order in a proceeding under section 2255" unless the petitioner first obtains a certificate of appealability). A certificate of appealability may issue only if Mr. Amador-Flores "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As discussed in this Proposed Finding and Recommended Disposition, I recommend finding that Mr. Amador-Flores has failed to make the requisite showing of a denial of a constitutional right. I therefore recommend not issuing a certificate of appealability.

### CONCLUSION

For the above-stated reasons, I recommend the following:

1. Deny relief on all grounds of Petitioner's original and amended Motion to Vacate Under 28 U.S.C. § 2255 (CV Docs. 1, 6; CR Doc. 215), without the need to hold an evidentiary hearing, and dismiss this case; and

2. decline to issue a certificate of appealability because Petitioner Javier Amador-Flores has not made a substantial showing of the denial of a constitutional right.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**